# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### (Tampa Division)

**SECURITIES AND EXCHANGE COMMISSION,**

     **Plaintiff,**                                 **Case No.  8:08-cv-993-T-27-MAP**

     **v.**

**GLOBAL DEVELOPMENT &**
**ENVIRONMENTAL RESOURCES, INC.,**
**PHILIP PRITCHARD, PIETRO CIMINO,**
**DANTE M. PANELLA,**
**DARKO S. MRAKUZIC,**
**ANTHONY M. CIMINI, SR.,**
**AND CARMINE J. BUA,**

     **Defendants,**

**QUANTUMVEST HOLDINGS, LTD.,**

     **Relief Defendant.**

                                              /

## PLAINTIFF'S MOTION FOR FINAL JUDGMENT OF PERMANENT INJUNCTION AND OTHER RELIEF AS TO DEFENDANT DARKO S. MRAKUZIC AND ORDER OF DISGORGEMENT AND OTHER RELIEF AS TO RELIEF DEFENDANT QUANTUMVEST HOLDINGS, LTD.

Plaintiff Securities and Exchange Commission moves the Court for a Final Judgment of Permanent Injunction and Other Relief as to Defendant Darko S. Mrakuzic and an Order of Disgorgement and Other Relief as to Relief Defendant Quantumvest Holdings Ltd. Specifically, the Commission requests the Court enter a final judgment against Mrakuzic that: (1) permanently enjoins him from future violations of the federal securities laws; (2) orders Mrakuzic to pay disgorgement of $6,618,568 plus prejudgment interest of $2,060,829; (3) imposes a civil penalty equal to Mrakuzic's pecuniary gain of $6,618,568; (4) bars Mrakuzic from participating in any offering of penny stocks; and (5) orders Mrakuzic to repatriate to the United States assets sufficient

to satisfy the judgment against him.  The Commission further requests the Court hold Mrakuzic and Quantumvest jointly and severally liable for $2,830,878, which represents the ill-gotten gains Quantumvest received as a result of Mrakuzic's fraudulent activities (including prejudgment interest), and also order Quantumvest to repatriate such funds to the United States.  In support of this motion the Commission states:

<b><u>BACKGROUND SUMMARY</u></b>

The Commission filed this action on May 22, 2008, to enjoin and restrain Mrakuzic from violating the federal securities laws.  On March 8, 2010, the seven-member jury found Mrakuzic liable for violating Sections 5(a) and 5(c) of the Securities Act of 1933 ("Securities Act") and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Exchange Act Rule 10b-5.  Specifically, the jury found Mrakuzic violated those provisions of the federal securities laws by participating in a fraudulent scheme to illegally issue purportedly unrestricted shares of Global Development and Environmental Resources, Inc. stock to three foreign entities where Mrakuzic secretly owned accounts.  Mrakuzic then sold those shares to the investing public during a false promotional campaign about Global's financial condition and business prospects.

In the Complaint, the Commission requested the entry of: (1) a permanent injunction; (2) an order of disgorgement with prejudgment interest; (3) a penny stock bar; and (4) a civil penalty against Mrakuzic.  Additionally, the Commission requested the Court hold Mrakuzic and Quantumvest, which Mrakuzic admitted he owns and controls, jointly and severally liable for the illicit proceeds Quantumvest received from Mrakuzic's fraudulent activities with prejudgment interest.  Finally, the Commission requested an Order requiring Mrakuzic and Quantumvest to repatriate assets to the United States for the purpose of satisfying any monetary judgment against

2

them.  The Commission requests the Court grant all the relief requested in the Complaint and provides the specific bases for each form of relief in this motion.

## MEMORANDUM OF LAW

### Permanent Injunctive Relief Is Warranted Against Mrakuzic

The jury found Mrakuzic liable for violating Sections 5(a) and 5(c) of the Securities Act and Section 10(b) of the Exchange Act and Exchange Act Rule 10b-5.  The Commission is entitled to injunctive relief when it establishes (1) a violation of the federal securities laws, and (2) a reasonable likelihood of future violations.  *SEC v. Calvo*, 378 F.3d 1211, 1216 (11th Cir. 2004); *SEC v. Unique Fin. Concepts,* 196 F.3d 1195, 1199 n.2 (11th Cir. 1999).  The jury verdict against Mrakuzic established the first prong.  In determining whether Mrakuzic is reasonably likely to continue to violate the securities laws, the Court should consider the following factors:

(1)     the egregiousness of the defendant's actions;

(2)     the isolated or recurrent nature of the violations;

(3)     the degree of scienter involved;

(4)     the sincerity of the defendant's assurances against future violations;

(5)     the defendant's recognition of the wrongful nature of his conduct; and

(6)     the likelihood that the defendant's occupation will present opportunities for future violations.

*SEC v. Carriba Air, Inc.*, 681 F.2d 1318, 1322 (11th Cir. 1982) (affirming grant of permanent injunction) (citing *SEC v. Blatt*, 583 F.2d 1325 (5th Cir. 1978)); *SEC. v. Youmans*, 729 F.2d 413, 415 (6th Cir. 1984) (reversing denial of injunction).

Consideration of these factors with respect to Mrakuzic leads inexorably to the conclusion that a permanent injunction against him is fully warranted.  Mrakuzic's fraudulent

conduct was egregious as he: (1) employed numerous intermediaries and used secret foreign accounts to hide his involvement in the fraudulent scheme; (2) fraudulently signed a document that allowed him to receive approximately one million illegally issued shares into an account he secretly owned at a Swiss Bank; and (3) told a co-defendant, Dante Panella, to fraudulently sign another document that allowed Mrakuzic to receive approximately one million more shares into an account Mrakuzic secretly maintained with a Panamanian brokerage firm.

Furthermore, this fraud was not an isolated event. Mrakuzic was a securities registered representative in Vancouver until the Investment Dealers Association of Canada suspended Mrakuzic's securities license for violating numerous provisions of Canada's securities laws and lying about his conduct during the investigation into those violations. A copy of Mrakuzic's Settlement Agreement with the Investment Dealers Association of Canada is attached to this motion as Exhibit 1. With respect to the Global fraudulent scheme, Mrakuzic was involved from the very beginning when he met with Global's management in early 2005, well before the reverse merger, through his multi-million dollar exit in the fall of 2005. In addition, Mrakuzic admitted at his deposition that he has facilitated several other reverse merger transactions with the same individuals he engaged to carry out this scheme – Pollak, Panella, and Meehan - and obtained purportedly unrestricted shares of those companies, including the receipt of purportedly unrestricted shares for one company through the same method used to fraudulently issue Global shares (i.e. – purported debt conversion) after the Commission began investigating the Global fraud. Mrakuzic April 24, 2009 deposition transcript, attached as Exhibit 2, at pp.41:17 – 52:10). Simply put, Mrakuzic is a securities recidivist; his fraudulent conduct in this matter was hardly an isolated incident.

Furthermore, Mrakuzic's actions demonstrate a high degree of scienter. He hid behind

secret accounts and straw men to carry out a complex scheme to enrich himself at the expense of the investing public. He even hid his ownership of the secret foreign accounts from the very people who facilitated his scheme - telling Steven Pollak "Don't ask" and "It's none of your business" when Pollak inquired about the foreign entities Mrakuzic designated to receive the illegally issued shares. Mrakuzic also refused to discuss those entities with Panella after the Commission started its investigation into the fraud.

Moreover, Mrakuzic has certainly not acknowledged the wrongfulness of his conduct or otherwise provided assurance he will not violate the law in the future. At trial Mrakuzic attempted to place responsibility for his fraudulent scheme on everyone but himself despite the voluminous evidence showing his extensive involvement and significant illicit profits. Given his past regulatory history and continued "investing" and "facilitating transactions" in the penny stock market, it is likely Mrakuzic will again violate the securities laws. In short, the record amply supports entry of a permanent injunction against Mrakuzic.

### The Court Should Order Mrakuzic to Disgorge His Ill-Gotten Gains

The Court should order Mrakuzic to disgorge all the illicit profits he received as a result of the fraudulent scheme. Disgorgement is an equitable remedy for violations of the federal securities laws that aims to "force a defendant to give up the amount by which he is unjustly enriched." *SEC v. Tome*, 833 F.2d 1086, 1096 (2d Cir. 1987). Disgorgement is designed both to deprive a wrongdoer of unjust enrichment and to deter others from violating the securities laws. *Blatt*, 583 F.2d at 1335; *see also SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1104 (2d Cir. 1972) ("The effective enforcement of the federal securities laws requires that the SEC be able to make violations unprofitable.").

"The SEC is entitled to disgorgement upon producing a reasonable approximation of a

defendant's ill-gotten gains." *Calvo*, 378 F.3d at 1217. "The SEC's burden for showing the amount of assets subject to disgorgement . . . is light: 'a reasonable approximation of a defendant's ill-gotten gains [is required] . . . . Exactitude is not a requirement.'" *SEC v. ETS Payphones, Inc.,* 408 F.3d 727, 735 (11th Cir. 2005) (quoting *Calvo*, 378 F.3d at 1217). The burden then shifts to the defendant to demonstrate the Commission's estimate is not a reasonable approximation. *Calvo*, 378 F.3d at 1217. Moreover, in determining the appropriate disgorgement amount, all doubts "are to be resolved against the defrauding party." *SEC v. First City Fin. Corp., Ltd.,* 688 F. Supp. 705, 727 (D.D.C. 1988), *aff'd*, 890 F.2d 1215 (D.C. Cir. 1989); *SEC v. Silverman*, 2009 WL 1376248 at *3 (11th Cir. May 19, 2009) (finding lower court acted within its discretion in awarding disgorgement of all unaccounted-for funds from the fraudulent offering and selling of unregistered securities in violation of the Securities Act and Exchange Act).

Here, Mrakuzic received millions of dollars as a result of his fraudulent activities that violated the federal securities laws. The Court should order Mrakuzic to disgorge those ill-gotten gains. In the following paragraphs, the Commission describes in detail the millions of dollars Mrakuzic received in illegal profits. A chart summarizing those profits is below:

| Mrakuzic Entity / Account | Profits |
|---|---|
| Rahn & Bodmer account | $731,790 |
| Quantumvest account | $1,258,844 |
| Quantumvest (Panella debt) | $900,000 |
| PanAmerica account | $3,727,934 |
| TOTAL | $6,618,568 |

Mrakuzic received a total of $6,618,568 in ill-gotten gains[1] from his violations of the federal securities laws. As support for this disgorgement amount, the Commission attaches as Exhibit 3, the Declaration of Commission accountant Kathleen Strandell, which is based on a

---

[1] All numbers relating to disgorgement have been rounded to the nearest dollar.

thorough analysis of the brokerage account statements for Mrakuzic's foreign accounts admitted into evidence at trial, and her review of the relevant testimony concerning additional proceeds Quantumvest received via satisfaction of a debt Quantumvest owed Panella.

### *Mrakuzic Sold Illegally Issued Global Shares Through His Rahn & Bodmer Account*

At trial, via his designated deposition testimony, Mrakuzic admitted he was the beneficial owner of the account at Rahn & Bodmer that received 926,171 shares of Global stock. Ex. 2, at pp.138:20 – 142:7, 182:13-19. The Court admitted into evidence business records from Rahn & Bodmer relating to Mrakuzic's account No. 32319. Trial Ex. 65. Those records show Mrakuzic received 926,171 Global shares in his Rahn & Bodmer account and sold 143,800 of those shares for gross proceeds of $741,269. Ex. 3, at ¶4. Although courts have routinely required securities law violators to disgorge total gross profits,[2] the Commission deducted $9,479 Mrakuzic paid in consolidated commission fees and Swiss stamp taxes, leaving net profits of $731,790 from the Rahn & Bodmer sales. Ex. 3, at ¶4.

### *Mrakuzic Sold Illegally Issued Global Shares Through Quantumvest*

Mrakuzic and Quantumvest admitted Mrakuzic controls Quantumvest. Dkt. 35, ¶36; Dkt. 50, ¶36. They also admitted Quantumvest received shares of Global stock, which it promptly sold for approximately $1.2 million. Dkt. 35, ¶75; Dkt. 50, ¶75. More specifically, Quantumvest sold 326,171 Global shares for gross proceeds of $1,277,211. Ex. 2, at pp.182:20 – 183:10; Ex. 3, at ¶5.

In addition to the profits from Quantumvest's public stock sales, Quantumvest received $900,000 in ill-gotten gains via payment of a debt owed to Panella that Quantumvest satisfied by

---

[2] *SEC v. Solow*, 554 F. Supp. 2d 1356, 1365 (S.D. Fla. 2008) (refusing to offset commissions paid); *SEC v. United Monetary Services, Inc.*, 1990 WL 91812 at *9 (S.D. Fla. May 18, 1990) (refusing to offset disgorgement for expenses incurred conducting the fraud and noting courts routinely required wrongdoers in securities fraud to disgorge the gross sums received).

transferring 500,000 shares of illegally issued Global stock to Panella. In their respective Answers, Mrakuzic and Quantumvest admitted Quantumvest transferred those Global shares to Panella as payment for this debt. Dkt. 35, ¶15; Dkt. 50, ¶15. Furthermore, Mrakuzic testified about this monetary benefit at his April 24, 2009 deposition:

Q. Have you seen Exhibit 74 before, sir?

A. Yes I have.

Q. And what is it?

A. It's a private stock purchase agreement between Quantumvest Holdings and Mr. Panella.

Q. And was this the agreement with Mr. Panella you had referenced just before we went off the record to transfer the 500,000 Global shares to him.

A. Correct.

Q. Was that in cancellation of a debt you owed Mr. Panella?

A. Correct.

Q. What was the amount of the debt?

A. It was in the neighborhood of this $900,000 figure.

Ex. 2, at p.114:8-22. Simply stated, Quantumvest's satisfaction of that debt through payment in Global shares represents an additional $900,000 benefit Quantumvest received from Mrakuzic's fraudulent conduct.

### *Mrakuzic Sold Illegally Issued Global Shares Through His PanAmerica Capital Group Account*

Mrakuzic also admitted he was the beneficial owner of an account at PanAmerica Capital Group that received 926,171 shares of Global stock. Ex. 2, at pp.77:10-16, 183:11-21. At trial the Court admitted into evidence account records for the PanAmerica Capital Group account

maintained at the U.S. brokerage firm, Empire Financial Group, Inc. Trial Exhibit 73. PanAmerica Capital Group's account received 926,171 shares of illegally issued Global stock and sold a net of 732,500 Global shares for profits of $3,727,934. Ex. 3, at ¶6.

**<u>Mrakuzic Knew the Amount of Disgorgement the Commission Would Seek</u>**

In pre-trial discussions, Mrakuzic argued in various ways that the Commission has impermissibly changed its basis for disgorgement or failed to supplement its initial disclosures regarding the amount of disgorgement sought in this case. We anticipate Mrakuzic will raise those same arguments in his response to this motion. Although there is no merit to his arguments, we address them below.

As clearly set forth in the Complaint, the Commission sought an "Order directing the Defendants and Relief Defendant to disgorge *all profits or proceeds they received as a result of the acts and/or course of conduct complained of herein, with prejudgment interest.*" Dkt. 1, at 21. The Commission has not amended this request for relief during the course of these proceedings, and Mrakuzic cannot claim surprise or prejudice because the Commission is seeking disgorgement of more than $6.6 million - *all profits or proceeds he received* - as a result of his participation in the illegal scheme the Commission proved at trial.

In our September 26, 2008 Initial Disclosures, the Commission stated it sought "to hold Mrakuzic jointly and severally liable for Quantumvest's proceeds of approximately $1.2 million from the sale of illegally issued shares of Global, plus prejudgment interest." *See* Commission's Rule 26(a) disclosures, attached as Exhibit 4, at p.10. The disclosures also noted that "Quantumvest's brokerage account statements support the $1.2 million disgorgement figure." *Id*. at pp.7-8. Furthermore, the Commission listed documents we might use to support our claims, which included trading records for Rahn & Bodmer and PanAmerica Capital Group. At

9

that point in the proceedings, however, the Commission was not aware Mrakuzic was the owner of the accounts at Rahn & Bodmer and PanAmerica that received and sold illegally issued Global shares,[3] netting Mrakuzic additional proceeds of approximately $5.4 million.

The Federal Rules of Civil Procedure only require a party to supplement an initial Rule 26(a) disclosure "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information *has not otherwise been made known to the other parties during the discovery process or in writing*." Fed. R. Civ. P. 26(e)(1)(A). First of all, Mrakuzic cannot claim ignorance of the illegal profits *he received* from the sale of Global stock through *his* secret accounts at PanAmerica and Rahn & Bodmer as the Complaint itself clearly sought *all* illegal profits each defendant received.

Moreover, during discovery in late 2008, Mrakuzic's counsel informed the undersigned that the Swiss Federal Banking Commission had prevailed in seeking the Rahn & Bodmer account records under an exemption to Swiss bank secrecy law, and the Commission should expect to receive Mrakuzic's Swiss account documents shortly. Mrakuzic's counsel further informed the undersigned that he had just recently learned Mrakuzic owned the account at Rahn & Rodmer, acknowledged he understood this revelation of account information meant the disgorgement figure would increase, and stated he would explain that to his client.

Regarding the PanAmerica account, the Commission produced to Mrakuzic's counsel documents relating to PanAmerica's brokerage account maintained in the United States with Empire Financial Group, Inc. on January 22, 2009. Those documents, however, did not reveal the beneficial owners for whom PanAmerica traded, and PanAmerica had refused to provide the

---

[3] Complaint Paragraph 36 identified the three foreign entities as "Mrakuzic's Assignees" but Mrakuzic denied those allegations in his Answer, only admitting Quantumvest had purchased "an interest" in the purported convertible note. Dkt. 50, ¶36.

Commission such client information, claiming disclosure would violate Panamanian law.[4] Accordingly, the Commission did not discover Mrakuzic was the beneficial owner of the account at PanAmerica that received and sold illegally issued Global shares until Mrakuzic's April 24, 2009 deposition. Ex. 2, at pp.77:10-16, 183:11-21.

Quite simply, there is no merit to Mrakuzic's expected argument he was not aware until the pre-trial disclosures that the Commission would be seeking disgorgement of not only the ill-gotten gains he obtained through Quantumvest, but all the illicit proceeds he received for the very same fraud through his secret accounts at Rahn & Bodmer and PanAmerica.

### The Court Should Award Prejudgment Interest on the Disgorgement Amount

For cases in which a securities law violator has enjoyed access to funds over a period of time as a result of his or her wrongdoing, requiring the wrongdoer to pay prejudgment interest is consistent with the equitable purpose of the remedy of disgorgement. *SEC v. Hughes Capital Corp.*, 917 F. Supp. 1080, 1090 (D.N.J. 1996), *aff'd*, 124 F.3d 449 (3d Cir. 1997). A defendant's wrongdoing justifies the award of prejudgment interest in accord with the doctrine of fundamental fairness. *See SEC v. Tome*, 638 F. Supp. 638, 639 (S.D.N.Y. 1986). In the context of Section 10(b) and Rule 10b-5 actions, proof of a defendant's scienter is sufficient to justify the award of prejudgment interest. *Rolf v. Blyth*, 637 F.2d 77, 87 (2d Cir. 1980). The members of the jury necessarily found Mrakuzic acted with scienter, an element of the Section 10(b) and Rule 10b-5 charges, when they found Mrakuzic violated those antifraud provisions. Accordingly, the Court should award prejudgment interest.

The Court has discretion to determine the rate at which such interest should be calculated. *SEC v. First Jersey Sec., Inc.,* 101 F.3d 1450, 1476 (2d Cir. 1996). In calculating prejudgment

---

[4] Although the Commission requested from Mrakuzic all documents subject to his possession, custody, or control relating to PanAmerica, Mrakuzic stated he had "no responsive documents."

interest, courts have deemed the tax underpayment rate as established by the Internal Revenue Service, IRC § 6621(a)(2), and assessed on a quarterly basis, to be a reasonable rate. *SEC v. Anticevic*, 2009 WL 4250508 at \*5 (S.D.N.Y. Nov. 30, 2009) ("In SEC injunctive actions, prejudgment interest should be calculated by applying the Internal Revenue Service tax underpayment rate"); *SEC v. Colonial Investment Mgmt, LLC*, 659 F. Supp. 2d 467, 502 (S.D.N.Y. 2009); *SEC v. K.W. Brown & Company,* 55 F. Supp. 2d 1275, 1313 (S.D. Fla. 2007). Based on that rate and calculated from November 22, 2005,[5] through the end of March 2010 (before Mrakuzic's response to this Motion is due), the prejudgment interest amount is $2,060,829, which, combined with disgorgement principal, equals $8,679,397. Ex. 3, at ¶9.

### The Court Should Hold Mrakuzic and Quantumvest
### <u>Jointly and Severally Liable for Quantumvest's Illicit Profits</u>

It is a well-settled principle that joint and several liability is appropriate in securities laws cases where two or more individuals or entities have close relationships in engaging in illegal conduct. *Calvo*, 378 F.3d at 1215 (citations omitted). This holds true even where one defendant is more culpable than another. *Id.* Here, Mrakuzic and Quantumvest admitted Mrakuzic is the sole owner and control person of Quantumvest. Dkt. 35, ¶36; Dkt. 50, ¶36; Ex. 2, at p.123:14-18. It has also been established Mrakuzic used Quantumvest as a vehicle to carry out his fraudulent scheme. Thus, the Court should hold Mrakuzic and Quantumvest jointly and severally liable for the $1,258,844 in trading profits and the $900,000 satisfaction of debt benefit, or $2,158,844 in illegal profits Quantumvest received, plus prejudgment interest. Using the method described above, the prejudgment interest is $672,034, which combines for a total of

---

[5] November 22, 2005 is the appropriate start date for calculation of prejudgment interest as Mrakuzic had received all but approximately $800 of his ill-gotten gains by this date. That late-received benefit came from Quantumvest's sale of its last few shares of Global stock in May 2006. *See* Ex. 3, at ¶¶4-5.

disgorgement and prejudgment interest subject to joint and several liability of $2,830,878 (rounded down to the nearest dollar). Ex. 3, at ¶8.

**The Court Should Impose a Civil Money Penalty Against Mrakuzic**

Under Section 20(d) of the Securities Act and Section 21(d)(3) of the Exchange Act, the Court may impose a civil penalty against Mrakuzic. The purposes of civil penalties are to punish the individual violator as well as deter future violations. *SEC v. Palmisano,* 135 F.3d 860, 866 (2d Cir. 1998); *K. W. Brown*, 55 F. Supp. 2d at 1314; *SEC v. Tanner,* 02 Civ. 0306, 2003 WL 21523978 at *2 (S.D.N.Y. July 3, 2003); *SEC v. Kenton Capital, Ltd.*, 69 F. Supp. 2d 1, 17 (D.D.C. 1998); *SEC v. Moran,* 944 F. Supp. 286, 296 (S.D.N.Y. 1996). As set forth in H.R. Report No. 616 - the Report of the Committee on Energy and Commerce of the U.S. House of Representatives on the Remedy Act,

> [T]he money penalties proposed in this legislation are needed to provide financial disincentives to securities law violations other than insider trading ... Disgorgement merely requires the return of wrongfully obtained profits; it does not result in any actual economic penalty or act as a financial disincentive to engage in securities fraud .... The Committee therefore concluded that authority to seek or impose substantial money penalties, in addition to the disgorgement of profits, is necessary for the deterrence of securities law violations that otherwise may provide great financial returns to the violator. (Citations omitted).

Against a natural person, these statutes establish three tiers of penalties. Mrakuzic's conduct falls within the third tier, which provides the amount for each violation "shall not exceed the greater of $130,000 for a natural person . . . or the gross amount of pecuniary gain to such defendant as a result of the violation" if the violation involved "fraud, deceit, manipulation, or deliberate or reckless disregard for a regulatory requirement; and . . . such violation directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other

persons."[6] 15 U.S.C § 77t(d); 15 U.S.C. § 78u(d)(3). Based upon the public policy objective of deterrence, the Commission submits that a substantial penalty is necessary and appropriate to financially punish Mrakuzic for his unlawful activities and to deter others from engaging in violations of the federal securities laws.

Factors courts have considered include the egregiousness of the violation, the isolated or repeated nature of the violations, the degree of scienter involved and the deterrent effect given the defendant's financial worth. *K.W. Brown*, 55 F. Supp. 2d at 1315; *SEC v. Yun,* 148 F. Supp. 2d 1287 (M.D. Fla. 2001). Application of these factors to the egregious misconduct of a securities recidivist who continues to actively participate in the United States penny stock market drastically tilts the scales in favor of substantial third tier civil penalties against Mrakuzic. Moreover, courts in the Southern District of New York have considered additional factors such as "defendants' lack of cooperation and honesty with authorities" and "defendants' failure to admit to their wrongdoing." *Lybrand,* 281 F. Supp. 2d at 730 (string cite omitted); *Colonial Investment Mgmt*, 659 F. Supp. 2d at 503 (string cite omitted). Consideration of those factors also weighs heavily in favor of the maximum penalty against Mrakuzic. Accordingly, in addition to the disgorgement with prejudgment interest, the Court should impose a civil penalty against Mrakuzic equal to his pecuniary gain of $6,618,568.

**<u>Mrakuzic's Fraudulent Conduct Warrants A Penny Stock Bar</u>**

Section 21(d)(6) of the Exchange Act and Section 20(g)(1) of the Securities Act state that in injunctive proceedings "against any person participating in, or at the time of the alleged misconduct, who was participating in, an offering of penny stock, the court may prohibit that person from participation in an offering of penny stock, conditionally or unconditionally, and

---

[6] The $130,000 civil penalty amount reflects the appropriate inflation adjustment for the time period of Mrakuzic's violations (after February 14, 2005). *See* 17 C.F.R. §201.1003.

permanently or for such a period of time as the court shall determine." 15 U.S.C. § 78u(d)(6)(A); 15 U.S.C. § 77t(g)(1). Participating in an offering is broadly defined to include "any person engaging in activities with a broker, dealer, or issuer for purpose of issuing, trading, or inducing or attempting to induce the purchase or sale of a penny stock." 15 U.S.C. § 78u(d)(6)(B); 15 U.S.C. § 77t(g)(2).

There has been no dispute Global was a "penny stock" as defined pursuant to the Exchange Act. *See* 17 C.F.R. §240.3a51-1. Additionally, Panella provided uncontroverted testimony at trial that Global was a "penny stock" and acknowledged he consented to the entry of a penny stock bar against him as a result of his actions in the Global scheme. Panella March 4, 2010 testimony transcript, attached as Exhibit 5, at pp.60:20 – 61:2. Moreover, in finding Mrakuzic violated Sections 5(a) and 5(c) of the Securities Act, the jury determined he was a "necessary participant" and/or "substantial factor" in the illicit sale of Global shares. The facts conclusively demonstrate a penny stock bar is warranted against Mrakuzic and necessary to protect investors and the integrity of the market. Accordingly, the Court should enter a permanent penny stock bar against Mrakuzic.

### The Court Should Enter a Repatriation Order as to Mrakuzic and Quantumvest

In addition to the relief requested above, the Court should exercise its inherent authority to enforce its judgments, and enter an Order requiring Mrakuzic and Quantumvest to repatriate assets to the United States for the purpose of satisfying the judgments against them. *Peacock v. Thomas,* 516 U.S. 349 (1996) (describing "a federal court's inherent power to enforce its judgments"); *see also SEC v. Kirkland*, 2007 WL 724886 at *2-3 (M.D. Fla. Feb. 28, 2007) (Judge Antoon enforcing repatriation order through court-appointed receiver).

## CONCLUSION

The Commission has attached proposed Final Judgments providing for the requested relief as to Mrakuzic and Quantumvest. The jury verdict against Mrakuzic and the evidence admitted at trial provide considerable support for the Court to grant all the relief requested herein against Mrakuzic and Quantumvest without further evidentiary hearings or argument; however, the Commission notes Mrakuzic made an oral request post-verdict that the Court conduct a hearing on post-trial relief.

Respectfully submitted,

March 23, 2010

By: s/ Brian K. Barry
Brian K. Barry
Senior Trial Counsel
Florida Bar No. 0632287
Direct Dial: (305) 982-6382
Email: barryb@sec.gov

C. Ian Anderson
Senior Trial Counsel
New York Reg. No. 2693067
Direct Dial No.: (305) 982-6317
Email: andersonci@sec.gov

Attorneys for Plaintiff
**SECURITIES AND EXCHANGE COMMISSION**
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
Telephone: (305) 982-6300
Facsimile: (305) 536-4154

## CERTIFICATE OF SERVICE

I hereby certify that on March 23, 2010, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Mark K. Braswell
Braswell Law Group
1319 T Street NW
Washington, D.C. 20009-4438
Telephone:  (202) 629-3416
Facsimile:   (202) 332-8337
*Counsel for Defendant Darko S. Mrakuzic and Relief Defendant Quantumvest Holdings, Ltd.*

John E. Johnson, Esq.
William P. Cassidy, Jr., Esq.
Shutts & Bowen LLP
100 S. Ashley Drive, Suite 1500
Tampa, FL 33602
Telephone:  (813) 229-8900
Facsimile:   (813) 229-8901
*Co-Counsel for Defendant Darko S. Mrakuzic and Relief Defendant Quantumvest Holdings, Ltd.*

Peter B. King, Esq.
Burton W. Wiand, Esq.
Fowler White Boggs Banker, P.A.
501 E. Kennedy Blvd., Suite 1700
Tampa, FL 33602
Telephone:  (813) 228-7411
Facsimile:   (813) 229-7313
*Counsel for Defendant Dante M. Panella*

John W. Cotton, Esq.
Cotton & Gundzik LLP
624 South Grand Avenue
22nd Floor
Los Angeles, California 90017
Telephone: (213) 312-1330
Facsimile:  (213) 623-6699
*Co-counsel for Defendant Dante M. Panella*

I further certify that on the same date I mailed the foregoing document and the notice of

electronic filing by U.S. Mail to the following non-CM/ECF participants:

William M. Aul, Esq.
Law Offices of William M. Aul
7676 Hazard Center Drive, Suite 500
San Diego, CA 92108
*Counsel for Defendant Carmine J. Bua*

Anthony M. Cimini, Sr., *pro se*
P.O. Box 996
Royal Oak, MI 48068

Philip Pritchard, *pro se*
910 Tamarack Lane
Rockford, Illinois 61107
Telephone: (815) 708-6911

Pietro Cimino, *pro se*
244 Dark Forest
Las Vegas, Nevada 89123

<u>s/ Brian K. Barry</u>
Brian K. Barry, Esq.