

PENGAD-Bayonne,N.J

**EXHIBIT**

**1**

## IN THE MATTER OF DISCIPLINE PURSUANT TO BY-LAW 20 OF THE INVESTMENT DEALERS ASSOCIATION OF CANADA

### RE: DARKO STJEPAN MRAKUZIC

### SETTLEMENT AGREEMENT

### I.     INTRODUCTION

1. The staff ("Staff") of the Investment Dealers Association of Canada (the "Association") has conducted an investigation (the "Investigation") into the conduct of Darko Stjepan Mrakuzic (the "Respondent").

2. The Investigation discloses matters for which the Pacific District Council of the Association (the "District Council") may penalize the Respondent by imposing penalties.

### II.     JOINT SETTLEMENT RECOMMENDATION

1. Staff and the Respondent consent and agree to the settlement of these matters by way of this Settlement Agreement in accordance with By-law 20.25.

2. This Settlement Agreement is subject to its acceptance or the imposition of a lesser penalty or less onerous terms, or the imposition, with the consent of the Respondent, of a penalty or terms more onerous, by the District Council in accordance with By-law 20.26.

3. Staff and the Respondent jointly recommend that the District Council accept this Settlement Agreement.

4. If at any time prior to the acceptance of this Settlement Agreement, or the imposition of a lesser penalty or less onerous terms, or the imposition, with the consent of the Respondent, of a penalty or terms more onerous, by the District Council, there are new facts or issues of substantial concern in the view of Staff regarding the facts or issues set out in Section III of this Settlement Agreement, Staff will be entitled to withdraw this Settlement Agreement from consideration by the District Council.



ALL-STATE LEGAL®

**PLAINTIFF'S
EXHIBIT**

70

April 24/09

NN

DN-022-A

2

## III.      STATEMENT OF FACTS

### (i)          Acknowledgment

Staff and the Respondent agree with the facts set out in this Section III and acknowledge that the terms of the settlement contained in this Settlement Agreement are based upon those specific facts.

### (ii)         Factual Background

1. The Respondent was first approved as a registered representative on or about November 3, 1987. He was continuously registered until February 2000. The Respondent's registration history material to the matters set out in this Settlement Agreement commences with his employment on February 1, 1995 as a registered representative with Pacific International Securities Inc. ("Pacific"). The Respondent's employment was terminated for cause by Pacific on or about February 11, 2000. The Respondent has not since been employed in the industry.

2. The Uniform Termination Notice ("UTN") that was filed with the Association in respect of the Respondent indicates, *inter alia*, the following:

   The employee has been the subject of past internal discipline and has been suspended since January 20, 2000.

   The employee has been the subject of an internal investigation relating to transactions conducted in accounts on which the employee was the Registered Representative.

   The employee was instructed to provide answers to a number of questions in this regard and did so over the course of a number of interviews. The employee admitted that some of the early answers he gave to the firm were false or misleading. The employee admitted to an undisclosed outside business interest. The employee also admitted to facilitating transactions in one account for an undisclosed nominee.

### Short Selling

3. The Respondent was the registered representative for his client, PFC, which maintained US dollar cash account number 020-7957-2 at Pacific (the "PFC Cash Account").

4. On or about November 3, 1998, Pacific delivered an e-mail to the Respondent which noted that, with respect to the PFC Cash Account, "There appears to be numerous short covers in this cash account....Please advise." The Respondent responded to this e-mail on the same date that "expected delivery, but due to month end had to buy back-in."

5. The thirty (30) short sales in the PFC Cash Account related to four stocks, namely, USA Talks.com Inc., Auction TV Network Inc., Commercial Labor Mgmt. Inc., and Coronado Industries Inc.

DM-022-B

3

6.     The following trades of USA Talks.com Inc. in the PFC Cash Account were short sales:

| Settlement Date | Quantity Bought/Sold | Price | Balance |
| --- | --- | --- | --- |
| 12/31/98 | -1000 | $16.50 | -1000 |
| 01/04/99 | -1000 | $17.00 | -2000 |
| 01/08/99 | -2000 | $11.63 | -600 |
| 01/12/99 | -1000 | $15.00 | -500 |
| 01/13/99 | -1000 | $14.53 | -1500 |
| 01/14/99 | -1000 | $17.13 | -2500 |
| 01/15/99 | -500 | $23.63 | -3000 |
| 01/15/99 | -500 | $27.00 | -3500 |
| 01/15/99 | -500 | $27.75 | -4000 |
| 01/15/99 | -500 | $29.00 | -4500 |
| 01/19/99 | -500 | $33.75 | -5000 |
| 01/22/99 | -500 | $48.25 | -2000 |
| 01/25/99 | -500 | $49.50 | -2500 |
| 01/26/99 | -500 | $54.75 | -3000 |

7.     The following trades of Auction TV Network Inc. in the PFC Cash Account were short sales:

| Settlement Date | Quantity Bought/Sold | Price | Balance |
| --- | --- | --- | --- |
| 11/27/98 | -1000 | $3.69 | -1000 |
| 12/11/98 | -2500 | $2.38 | -2500 |
| 12/11/98 | -2000 | $3.00 | -4500 |
| 12/31/98 | -5000 | $2.88 | -4860 |
| 12/31/98 | -2100 | $2.88 | -6960 |
| 01/19/99 | -2500 | $3.00 | -2460 |
| 01/19/99 | -2500 | $2.81 | -4960 |
| 01/21/99 | -1000 | $3.44 | -5960 |

8.     The following trades of Commercial Labor Mgmt. Inc. in the PFC Cash Account were short sales:

| Settlement Date | Quantity Bought/Sold | Price | Balance |
| --- | --- | --- | --- |
| 12/15/98 | -2000 | $4.00 | -2000 |
| 12/15/98 | -1000 | $6.00 | -3000 |
| 12/16/98 | -200 | $8.00 | -3200 |
| 12/21/98 | -1000 | $6.50 | -4200 |

DM-022-C

4

| Settlement Date | Quantity Bought/Sold | Price | Balance |
|---|---|---|---|
| 01/07/99 | -1500 | $7.00 | -1500 |

9. The following trades of Coronado Industries Inc. in the PFC Cash Account were short sales:

| Settlement Date | Quantity Bought/Sold | Price | Balance |
|---|---|---|---|
| 11/19/98 | -8000 | $0.59 | -3240 |
| 12/23/98 | -10000 | $0.31 | -10000 |
| 12/28/98 | -15000 | $0.19 | -15000 |

10. The short sales outlined in paragraphs 6,7,8 and 9 herein were undeclared short sales. On or about January 29, 1999, Pacific issued a memorandum to the Respondent with respect to the short selling activity in the PFC Cash Account. The memorandum provides that "the buying-back activity is frequent and appears to be an intentional practice. It is difficult to come to any conclusion other than that you have made a practice of short selling in a cash account deliberately and with the intention of subverting the rules of both Pacific and of the regulatory authorities".

11. As a result of the short-selling activity in the PFC Cash Account, Pacific imposed internal discipline on the Respondent, which required the Respondent to pay $2,500 to charity.

*Outside Business Interest*

12. On or about December 11, 1998, the Respondent entered into a joint venture by way of agreement with respect to a business opportunity for an internet device trademarked as "iPhone" (the "Joint Venture"). The Respondent's father and SHL, a client of the Respondent, were also parties to the Joint Venture.

13. The Respondent failed to make Pacific aware of his involvement in the Joint Venture Agreement until on or about January 12, 2000.

*Misrepresentation to Firm*

14. In 1999 and in early 2000, the Respondent was subject to an internal investigation carried out by Pacific. During this investigation, the Respondent, when asked how his wife and father acquired shares in Autoco.com in 1999, stated that his wife and father had purchased the Autoco.com shares off-the-market from a private investor for $2 per share, which he knew or ought to have known was not true.

15. The Respondent's wife and father actually acquired the Autoco.com shares as a result of their participation in the Joint Venture project.

DM-022-D

5

*Circumventing the Firm*

16.    In or about April 1999, the Respondent introduced SHL to a transaction involving the purchase of a shell company, which company was renamed Autoco.com, in which SHL acquired 446,000 shares. Some of these Autoco.com shares were held on behalf of SHL by a third party at a brokerage firm.

17.    In or about September 1999, the Respondent was advised that some consideration (US $75,000) with respect to the purchase of the shell company had not been paid to the seller of that company. The Respondent was asked to provide assistance in relation to the payment of this sum.

18.    The Respondent approached SHL to provide this financing. Accordingly, the Respondent negotiated a settlement on behalf of SHL to have 45,000 Autoco.com shares transferred from the brokerage firm and delivered to the Respondent's father's account at Pacific.

19.    SHL had an account at Pacific, but that account contained a debit of $61,449.32 at the time that the Autoco.com shares were transferred from the brokerage firm to Pacific. The Respondent's father's account at Pacific was not in a debit position.

20.    The Autoco.com shares were liquidated from the Respondent's father's account at Pacific for proceeds of US $82,500. The Respondent arranged to have US $75,000 of the proceeds couriered to a party in the United States in order to discharge the amount owing by the shell company.

21.    If the Autoco.com shares had been transferred into SHL's account at Pacific, then a portion of the sale proceeds would have applied to the debt that SHL owed to Pacific.

22.    As a result of this transaction, the Respondent's father was released from all obligations that he had in relation to the Joint Venture.



23.    There is no evidence that Pacific ultimately incurred any losses as a result of the Respondent flowing the Autoco.com shares through the Respondent's father's account rather than SHL's account.

*History*



24.    The Respondent has not previously been the subject of professional discipline by a regulatory body of the securities industry.

## IV.    CONTRAVENTIONS

1.    In or about November and December 1998 and in or about January 1999, Darko Stejpan Mrakuzic, at all material times a registered representative employed by Pacific International Securities Corporation, a Member of the Association, effected thirty (30) short sales in the account of a client, PFC, contrary to section 56 of the British Columbia *Securities Act* and contrary to the instructions of Pacific International Securities Corporation, and thereby engaged in business

DM-022-E

6

conduct or a practice which is unbecoming a registered representative or detrimental to the public interest, contrary to Association By-law 29.1.

2.   On or about December 11, 1998, Darko Stjepan Mrakuzic, at all material times a registered representative employed by Pacific International Securities Corporation, a Member of the Association, failed to make Pacific International Securities Corporation aware of his involvement in a joint venture, and thereby engaged in business conduct or a practice which is unbecoming a registered representative or detrimental to the public interest, contrary to Association By-law 29.1.

3.   Throughout 1999 through to February 2000, Darko Stjepan Mrakuzic, at all material times a registered representative employed by Pacific International Securities Corporation, a Member of the Association, made false or misleading statements to Pacific International Securities Corporation with respect to the acquisition by himself and members of his family of shares in Autoco.com, which statements he knew or ought to have known were not true, and thereby engaged in business conduct or a practice which is unbecoming a registered representative or detrimental to the public interest, contrary to Association By-law 29.1.

4.   In or about September 1999, Darko Stjepan Mrakuzic, at all material times a registered representative employed by Pacific International Securities Corporation, a Member of the Association, facilitated a transaction for a client, SHL, through the account of Mrakuzic's father, in order to circumvent a debt owing by the client, SHL, to Pacific International Securities Corporation, and thereby engaged in business conduct or a practice which is unbecoming a registered representative or detrimental to the public interest, contrary to Association By-law 29.1.

V.      **ADMISSION OF CONTRAVENTIONS AND FUTURE COMPLIANCE**

The Respondent admits the contraventions of the Statutes or Regulations thereto, By-laws, Regulations, Rulings or Policies of the Association noted in Section IV of this Settlement Agreement. In the future, the Respondent shall comply with these and all By-laws, Regulations, Rulings and Policies of the Association.

VI.     **DISCIPLINE PENALTIES**

The Respondent accepts the imposition of discipline penalties by the Association pursuant to this Settlement Agreement as follows:

(a)   a fine in the sum of $30,000.00 within 30 days of the effective date of this Agreement, as set out at Part VIII;

DM-022-F

7

(b)    a prohibition against re-approval by the Association in any registered capacity for one year which one year period has run from March 2000 to February 2001;

(c)    twelve months of close supervision as a condition of re-approval in any registered capacity;

(d)    as a condition of re-approval in any registered capacity by the Association, the requirement that the Respondent must successfully re-write and pass the examination based on the *Conduct & Practices Handbook Course* administered by the Canadian Securities Institute;

(e)    a prohibition against re-approval in any capacity until such time as the fine and costs herein are paid in full;

## VII.    ASSOCIATION COSTS

The Respondent shall pay the Association's costs of this proceeding in the amount of $2,500.00, payable to the association within 30 days of the effective date of this Settlement Agreement.

## VIII.    EFFECTIVE DATE

This Settlement Agreement shall become effective and binding upon the Respondent and Staff in accordance with its terms as of the date of:

(a)    its acceptance, or

(b)    the imposition of a lesser penalty or less onerous terms, or

(c)    the imposition, with the consent of the Respondent, of a penalty or terms more onerous,

by the District Council.

## IX.    WAIVER

If this Settlement Agreement becomes effective and binding, the Respondent hereby waives his right to a hearing under the Association By-laws in respect of the matters described herein and further waives any right of appeal or review which may be available under such By-laws or any applicable legislation.

DN-022-G

## X.       STAFF COMMITMENT

If this Settlement Agreement becomes effective and binding, Staff will not proceed with disciplinary proceedings under Association By-laws in relation to the facts set out in Section III of this Settlement Agreement.

## XI.      PUBLIC NOTICE OF THE PENALTY

If this Settlement Agreement becomes effective and binding:

(a)     the Respondent shall be deemed to have been penalized by the District Council for the purpose of giving written notice to the public thereof by publication in an Association Bulletin and by delivery of the notice to the media, the securities regulators and such other persons, organizations or corporation, as required by Association By-laws and any applicable Securities Commission requirements; and,

(b)     the Settlement Agreement and the Association Bulletin shall remain on file and shall be disclosed to members of the public upon request.

## XII.     EFFECT OF REJECTION OF SETTLEMENT AGREEMENT

If the District Council rejects this Settlement Agreement:

(a)     the provisions of By-laws 20.10 to 20.24, inclusive, shall apply, provided that no member of the District Council rejecting this Settlement Agreement shall participate in any hearing conducted by the District Council with respect to the same matters which are the subject of this Settlement Agreement; and,

(b)     the negotiations relating thereto shall be without prejudice and may not be used as evidence or referred to in any hearing.

DM-022

9

AGREED TO by Staff at the City of Vancouver, in the Province of British Columbia, this "29th" day of December, 2003.

"Paul Smith"  
**WITNESS**

"Barbara Lohmann"  
**BARBARA G. LOHMANN**  
Enforcement Counsel, Pacific District  
Investment Dealers Association of Canada

AGREED TO by the Respondent at the "City" of "Vancouver" in the Province of British Columbia, this "27th" day of "December", 2003.

_____  
**WITNESS**

"Darko Mrakuzic"  
**RESPONDENT**

ACCEPTED by the Pacific District Council of the Investment Dealers Association of Canada, at the City of Vancouver, in the Province of British Columbia, this "27th"day of "January", 2004.

INVESTMENT DEALERS ASSOCIATION OF CANADA (PACIFIC DISTRICT COUNCIL)

Per: "Leon Getz"

Per: "Don Cromar"

Per: "Douglas MacKay"

DM-023

01/26/2007 21:28 FAX